HAYWARD et al. v. ELLIS LACER CO.

(Circuit Court of Appeals, First Circuit. May 1, 1911.)

No. 867.

PATENTS (§ 328*)—INVENTION—HANDLING-HORSE FOR SHOE UPPERS.
    The Hayward patent, No. 722,018, for a handling-horse for shoe-uppers, consisting of a piece of spring wire bent with two arms, upon which the uppers are strung in pairs, is void for lack of patentable invention.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by Martin A. Hayward and others against the Ellis Lacer Company. Decree for defendant, and complainants appeal. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Alfred H. Hildreth and George B. Hayward (Benjamin Phillips, of counsel), for appellants.

Oliver Mitchell and Everett D. Chadwick, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

COLT, Circuit Judge. This is a suit for infringement of the Hayward patent, No. 722,018, issued March 3, 1903. The patent relates to a "handling-horse for shoe-uppers." The device is shown in Figures 1 and 2 of the patent:

*Fig. 1.* *Fig. 2.*

In speaking of the object of the invention, the specification says:

"The invention primarily contemplates a handling-horse for shoe-uppers comprising means for conveniently and rapidly handling in pairs the separate parts of the uppers as well as the complete uppers, so as to greatly facilitate carrying out the different steps pursued in the manufacture of boots and shoes and dispensing with a large amount of the labor involved in maintaining the uppers and the parts thereof properly paired while the articles in different stages of completion are carried from one department to another of the manufacturing establishment.

"The present invention is intended to be essentially a labor-saving device by entirely dispensing with the necessity of tying the uppers or parts of uppers together by strings or cords, while at the same time providing for always maintaining the different parts in a properly-paired relation and

187 F.—9

facilitating the convenient handling or removing of a 'case' of uppers or upper parts from one department to another without the objectionable hauling about of boxes in which the cases of 24 pairs are usually made up."

In referring to the means for carrying out the invention, the specification says:

"In carrying out the invention the device as an entirety essentially consists of a spring-wire body, 11. This spring-wire body is preferably formed of a single length of spring-wire of sufficient stoutness for the purpose intended and bent upon itself to provide the separate side standards, 2, which constitute what may be properly termed 'upper-carriers,' said standards being designed to respectively receive thereon the rights and lefts of the uppers or upper parts. The said side standards or upper-carriers, 2, are arranged in sufficient spaced relation to permit of the uppers or upper parts being readily slipped over the same, and the standards are also preferably in their normal condition arranged in substantial parallelism, so that each of the same is equally available to the operator for placing on or removing a right or left upper or upper part. At the lower end or base the spring-wire body, 1, of the device is preferably twisted upon itself to provide a combined supporting-stem and handle, 3, adapted to detachably fit within the socket, 4, of a socket member, 5, which is designed to be seated flush within the operator's bench adjacent to the stitching or shoe-making machine, so that the entire device is within convenient reach of the operator.

"The side standards or upper-carriers, 2, are normally disconnected at their free ends, over which the uppers or upper parts are passed both in filling and emptying the horse: but when both standards or carriers, 2, of the horse are entirely filled with uppers or upper parts the free ends of the latter are adapted to be sprung together and detachably interlocked. This may be provided for in a number of ways, but preferably by forming the standards or carriers at their upper or free ends with reversely-disposed catch hooks or loops, 6, which may be readily engaged and disengaged during the manipulation of the horse.

"It will here be noted that one of the hooks, 6, forms a substantially vertical keeper, while the other forms a substantially horizontal catch for detachable engagement with the keeper. This arrangement is a very important feature of the present invention, as it materially facilitates the engagement and disengagement of the hooks."

With respect to the claims, it is sufficient to refer to the first and fifth:

"1. An upper-horse, having a pair of spaced upright upper-carriers, the space between the same being unobstructed from top to bottom to permit of uppers being placed astraddle of the respective carriers, and means for detachably connecting the tops of the carriers to permit displacement of the uppers."

"5. An upper-horse of the class described, comprising a spring-wire body having at its base a combined handle and supporting stem, and also provided with opposite side standards constituting carriers respectively for the rights and lefts of the uppers or upper parts, said standards being provided at their ends with catch members adapted to be detachably sprung into interlocked engagement."

Upon full consideration of the Hayward patent in connection with the drawings we are unable to discover anything more than the exercise of ordinary mechanical skill in the production of this holder for conveniently handling shoe-uppers.

There was manifestly no invention in the broad idea of such a holder composed of a piece of spring-wire with two arms over which the uppers are strung and held. This idea is as old as the first boy who cut a forked stick from a bush for stringing and holding his fish. If

there is any invention in the Hayward device, it must be by reason of some special features.

The most important of these special features are the hooks on the ends of the arms, by means of which the arms may be detachably interlocked. These hooks are nothing more than the ordinary catch hooks or loops made by bending over the ends of the wire, and the interlocking is effected by springing the ends of the wire together as shown in Figure 2. Although the patentee terms this arrangement a "very important feature of his invention," we find nothing in it that would not suggest itself to any ordinary mechanic who desired to interlock the two ends for the purpose of preventing the displacement of the uppers. It may further be observed in this connection that this specific interlocking arrangement possessed little, if any, utility, and that it was soon abandoned for an arrangement which is quite different.

The only remaining special feature is what the patentee calls the supporting-stem, which is adapted to fit within the socket located on the operator's bench. Manifestly there is nothing novel in this feature.

Upon the whole, we are unable to find any invention in the Hayward device, and it follows that the claims of the patent are void for this reason.

The decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.